

FILED
MAR 31 2000
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| CLARENCE MCCURDY,<br>individually, and on behalf of all persons<br>similarly situated,<br><br>    *Plaintiff,*<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY, INC., a corporation, et al.,<br><br>    *Defendants.* | CV-96-C-2782-W<br><br>ENTERED<br>APR 3 2000 |

| | |
|---|---|
| WILLIE WHITE,<br>individually, and on behalf of all persons<br>similarly situated,<br><br>    *Plaintiff,*<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY, INC., a corporation, et al.,<br><br>    *Defendants.* | CV-96-C-2781-W |

MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT

I. *Introduction*

In this putative class action under the Employee Retirement Income Security Act, 29 U.S.C. § 1100 *et seq.* ("ERISA"), the named plaintiffs Clarence McCurdy and Willie White essentially claim that to their detriment, Defendant Metropolitan Life Insurance Company ("MetLife") and their former employer, Defendant Sears, Roebuck & Company, Inc. ("Sears") made unilateral changes in

the Long Term Disability ("LTD") Benefit Plan when Sears switched to MetLife from Defendant Allstate Insurance Company (Allstate), as its carrier. At the core of the Complaint is the contention that the monthly disability benefits of the Plaintiffs are now subject to reduction by the amount of Social Security disability income received as a result of their disability. Defendants have moved for summary judgment. Based on the undisputed facts, the motion is due to be granted.

## II. *The Undisputed Facts*

1. Plaintiffs McCurdy and White were participants in a long-term disability benefits plan administered by their Sears.

2. Until December 31, 1988, Allstate served as the claims administrator and insurer of the Sears LTD Benefits Plan.

3. Under the LTD Plan administered by Allstate, it is expressly provided, in the bold section entitled, "PLAN AMENDMENT AND TERMINATION," that "Although Sears intends to continue the Plan, the Company necessarily reserves the right to modify, amend, suspend, or terminate it at any time." *See* Court File Document 50, Exhibit D.

4. The Allstate-administered Plan also contains the following provision:

**AMOUNT OF MONTHLY BENEFIT WHILE TOTALLY DISABLED**

"The monthly benefit payable from the Plan while you are Totally Disabled will not be less than $35 unless Allstate has made payments in excess of the amount actually payable under these LTD Provisions. **Then Allstate has the right to recover the excess by applying all or part of future monthly benefits until the excess has been recovered.**"

*See* Court File Document 50, Exhibit D.

5. As of January 1, 1989, MetLife became the insurer and administrator of the Sears

Plan.

   6. The Sears Plan, as administered by MetLife, provides, *inter alia*:

"REHABILITATIVE EMPLOYMENT
For dates of disability beginning on or after March 1, 1989,
(A) The amount of Monthly Benefits [shall be] the lesser of
- 50% of the first $12,500 of Monthly LTD Covered Earnings, less 50% of any Rehabilitation Earnings, if any, or
- 60% of your Monthly LTF Covered Earnings, **less (a) any Other Income to which you are entitled** and (b) 50% of your Rehabilitation Earnings, if any.

If the sum of your monthly benefit and your Other Income and/or Rehabilitation Earnings is greater than your Monthly LTD Covered Earnings at the time that you became disabled your Monthly Benefit will be reduced so that the sum will not exceed your Monthly Covered LTD Earnings."

*See* Rider to MetLife Policy entitled "Notice of Changes to Sears Group Long-Term Disability Insurance," Document 50, Ex. "C." (emphasis added).

   7. The changes in the Sears Plan accompanying its switch to MetLife were distributed in 1989 to all of the Plan's participants, including Plaintiffs.

   8. Plaintiff White applied to the Sears Plan for LTD benefits on September 29, 1992. His application was approved on October 18, 1992 effective retroactively to September 8, 1992. He began receiving the full formula amount of those benefits immediately.

   9. White also applied for Social Security disability benefits. On March 15, 1994, the Social Security Administration determined that White was disabled; and it awarded him $15,148 retroactively and $968 thereafter in monthly benefits.

   10. After White's Social Security award, MetLife reduced his Plan benefits and sought reimbursement from the retroactive Social Security award.

11. Plaintiff McCurdy filed his application for LTD benefits with MetLife on September 16, 1993. His application was subsequently approved; and his LTD benefits commenced in September of 1993.

12. In February of 1996, the Social Security Administration determined that McCurdy became disabled on April 20, 1993. It awarded him $37,050 in retroactive benefits and $1,196 monthly thereafter.

13. After McCurdy's Social Security award, MetLife reduced his Plan benefits and sought reimbursement from his retroactive Social Security award.

14. When Plaintiffs separately applied for Sears LTD benefits, each of them signed a MetLife agreement to this effect:

> I understand that the plan provides that the amount of Social Security benefits, as described in the Group Plan, for which I or any of my dependents may be eligible, **are to be deducted from the benefits payable under the plan**.
>
> I agree to send a copy of any award or declination letter received from the Social Security Administration to the Metropolitan Life Insurance Company and **will reimburse such Company in the amount due**, upon commencement of benefits awarded to me under the Social Security Act. Such reimbursement shall cover the period from the date of entitled benefits to and including the date of benefits last paid to me.

*See* "Reimbursement Agreements," Def. Metropolitan Life Ins. Co.'s and Allstate Ins. Co.'s Supp. Mem. in Support of Mot. for Summ. J. Ex. 1. (emphasis added).

## II. *Controlling Legal Principles*

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party bears the initial burden of showing that there is an absence of a genuine issue of material fact. For issues on which the non-movant bears the burden of proof at trial, the moving party simply may show that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case. *See Sherman v. Helms*, 80 F.Supp.2d 1365, 1369 (M.D. Ga. 2000) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993)).

If a moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the non-movant to overcome that showing by presenting substantial evidence in support of its motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All evidence and reasonable factual inferences drawn therefrom are viewed in the light most favorable to the party opposing the motion. *See Glitz v. Compagnie Nationale Air France*, 129 F.3d 554, 556-57 (11th Cir. 1997).

B. OTHER PRINCIPLES

ERISA is a comprehensive and reticulated statute that created a framework for the administration and maintenance of private employee benefit plans. *See Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361 (1980). Although the statute delineates a myriad of detailed procedural requirements for a plan's implementation and administration, one principle is unequivocally clear: ERISA maintains <u>no</u> minimum substantive content for employee welfare benefit plans, and therefore a district court has no authority to draft the substantive content of such plans.

See *Hunt v. Hawthorne Associates, Inc.*, 119 F.3d 888, 911 (11th Cir. 1997) (citing *Hamilton v. Air Jamaica Ltd.*, 945 F.2d 74, 78 (3rd Cir. 1991). Congress sought to discourage judicial entanglement with the substantive features of ERISA-regulated welfare benefit plans because presumably parties retain a greater degree of freedom to contract between themselves to determine the type and amount of benefits, and the conditions under which these benefits will be provided under the plan. *See Jordan v. Reliable Life Ins. Co.*, 694 F. Supp. 822, 832 (N.D. Ala. 1988) (citing *Vogel v. Independence Fed. Sav. Bank*, 728 F. Supp. 1210, 1229 (D. Md. 1990)).

Federal courts at every level have consistently held that it is outside the province of the judiciary to regulate the substantive terms of a welfare benefit plan. *See generally Metropolitan Life Ins. Co. v. Travelers Ins. Co.*, 471 U.S. 724, 736 (1985); *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995); *First Capital Life Ins. Co. v. AAA Communications, Inc.*, 906 F. Supp. 1546, 1555 (N.D. Ga. 1995).

### III. *Analysis*

Assuming that Sears and MetLife made unilateral changes in the Sears LTD Plan, ERISA does not empower this Court to grant the relief which Plaintiffs seek. The Plan itself confers on Sears the unilateral right not simply to change its terms, *but to terminate the Plan itself*!

But more important is the consideration that the operative provision did not change. Under the Sears LTD Plan, whether administered by Allstate or by MetLife, beneficiaries must reimburse for payments covered by a subsequent retroactive Social Security award. In that key respect, nothing has changed.

As a last ditch effort to avoid summary disposition, Plaintiffs contend they were

"unaware" that benefits paid by the insurance company would be reduced by the amount of Social Security benefits subsequently paid to them. *See* McCurdy Aff. at 2 and White Aff. at 2. The documents signed by Plaintiffs belie this assertion. *See infra*, fn.1. And it is now well established under Alabama law that a party has the affirmative duty to read and inspect any document which might affect that person's legal rights or liabilities. *See Ramp Operations Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

Because Plaintiffs applied for and received social security benefits, the outcome of this case has been preordained by the signed reimbursement contracts. It follows that MetLife may recoup the LTD benefits it paid Plaintiffs while their social security applications were pending.

## V. *Conclusion*

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted by separate order.

DONE this 31ˢᵗ day of March, 2000.

_____
UNITED STATES DISTRICT JUDGE
U.W. CLEMON